UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
IN RE: APPLICATION FOR       :    3:20MJ00855(SALM)
SEARCH WARRANT               :
                             :    November 23, 2020
-----------------------------x
```

## ORDER

On October 2, 2020, the government submitted an application for a warrant to search fourteen electronic devices allegedly belonging to and/or used by the target of an investigation. See Doc. #1. The application is accompanied by a sworn affidavit executed by an FBI Agent, attested to by telephone before the undersigned. See Doc. #1-1.

## I.   Background

The following facts are derived from the Affidavit in support of the Application (Doc. #1-1), and from the attachments to the government's supplemental memorandum (Doc. #4).

Ten of the devices were seized from the target's home on August 12, 2020, pursuant to a warrant issued by a Connecticut Superior Court Judge. See Doc. #4-2 (state warrant with return and inventory). Four were seized on the same date with the written consent of the target's wife, who resided with him, after the target informed law enforcement officials of their existence and location in the home. See Doc. #4-1 (consent form). All of these

seizures were conducted by detectives working for municipal police departments.

The target was arrested at the time of the search on August 12, 2020, and has remained in custody, pending trial on charges lodged in the Connecticut Superior Court, since that date.

In a footnote to the Affidavit, the agent indicates that she "is aware of the Second Circuit's recent decision in United States v. Smith, No. 17-2446, (2d Cir. July 28, 2020) which held that a thirty-one day delay in obtaining a search warrant to search a tablet computer that was lawfully seized from a car was unreasonable." Doc. #1-1 at 12 n.4. The affidavit attempts to distinguish Smith as follows: "Significantly, in Smith, the defendant's device was seized based on warrantless probable cause; the device seized was a single tablet; the police had no independent reason to hold on to the device and had little justification for the delay in seeking the warrant." Id.

After reviewing the application and affidavit, the undersigned expressed to the Assistant United States Attorney and the agent concerns regarding this characterization of Smith, and regarding the delay in this case -- a delay of 51 days between the seizure of the devices and the application for the warrant. The Court reserved decision on the issuance of the warrant, and provided counsel with an opportunity to submit a supplemental

memorandum and/or affidavit. The government submitted a memorandum on October 9, 2020. <u>See</u> Doc. #4.

## II.  __The Fourth Amendment__

The Fourth Amendment to the United States Constitution provides, as relevant here: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 108-09 (1977) (citations and quotation marks omitted). "This amendment is designed to protect the right of the individual citizen[.]" <u>United States v. Tarlowski</u>, 305 F. Supp. 112, 119 (E.D.N.Y. 1969).

The evaluation of "reasonableness" includes consideration of any delays in retaining or searching an item. Indeed, even "a lawful seizure can become unlawful if the police act with unreasonable delay in securing a warrant. [Courts] evaluate the reasonableness of the delay in light of all the facts and circumstances, and on a case-by-case basis." <u>United States v. Shaw</u>, 531 F. App'x 946, 948 (11th Cir. 2013) (citations and quotation marks omitted).

The requirements of the Fourth Amendment apply to the actions of both state and federal officials.

> The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which is basic to a free society. As such, the Fourth Amendment is enforceable against the States through the Fourteenth Amendment.

Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 528 (1967) (citations and quotation marks omitted).

### III. **The *Smith* and *Martin* Decisions**

In United States v. Smith, the Second Circuit was called upon to consider the reasonableness of the seizure and eventual search of a tablet device from a criminal defendant. Mr. Smith pled guilty conditionally, reserving his right to appeal the denial of his motion to suppress the evidence found on that tablet, contending inter alia, that "the duration of the seizure of the tablet was unreasonable." United States v. Smith, 759 F. App'x 62, 65 (2d Cir. 2019) ("Smith I") (quotation marks and citations omitted).

On appeal, the Second Circuit determined that it required "a fuller explanation and further findings" on this issue, and remanded to the District Court for that purpose. Smith I, 759 F. App'x at 65. The Court acknowledged its own precedent holding: "Of course, even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998). In Martin, the Second Circuit considered a delay of eleven days in

searching a package that had been seized as evidence. The Court observed that "[i]n some circumstances eleven days might well constitute an unreasonable delay." Martin, 157 F.3d at 54. There, however, the eleven-day delay ran from December 20, 1991, through December 31, 1991 -- a period spanning two weekends and the Christmas holiday -- and other factors weighed against a finding that the search was unreasonable. See id. at 54.

Relying in part on Martin and on an Eleventh Circuit decision, United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009), the Court identified four "[g]eneral relevant considerations" to be taken into account in evaluating the reasonableness of any delay in seeking a search warrant for seized property: (1) "the length of the delay," (2) "the importance of the seized property to the defendant," (3) "whether the defendant had a reduced property interest in the seized items," and (4) "the strength of the [government's] justification for the delay." Smith I, 759 F. App'x at 65.

On remand, the District Court "conducted an additional evidentiary hearing" and issued a new ruling, addressing "each of the four factors" identified in Smith I. United States v. Smith, 967 F.3d 198, 203 (2d Cir. 2020) ("Smith II"). The District Court again denied the motion to suppress, and the defendant again appealed. The Second Circuit, weighing the four factors, concluded that the 31-day delay in seeking a warrant to search the seized

~ 5 ~

device was unreasonable, and that the government had not offered sufficient justification for that delay. See Smith II, 967 F.3d at 206-07; 210. Weighing all of the factors, the Court found: "The delayed search of Smith's tablet was unreasonable in violation of the Fourth Amendment." Smith II, 967 F.3d at 211.

The Court concluded, however, that the evidence obtained from the tablet should not be suppressed because the delay in seeking the warrant "was an isolated act of negligence[,]" rather than a deliberate or reckless violation of the defendant's rights. Smith II, 967 F.3d at 212.

## IV.  Discussion

As noted, the agent expressly addressed Smith in her Affidavit, attempting to distinguish it as follows: "Significantly, in Smith, the defendant's device was seized based on warrantless probable cause; the device seized was a single tablet; the police had no independent reason to hold on to the device and had little justification for the delay in seeking the warrant." Doc. #1-1 at 12 n.4. The government provided additional arguments in its memorandum. The Court reviews each Smith factor below.

**A.    Length of the Delay**

The government argues[1] that the Court should consider the delay to be "only 10 days" -- measuring that delay by the time "from the opening of the FBI's case to when a search warrant for the devices was sought." Doc. #4 at 6. The Court disagrees, on several grounds. First, the Court does not agree that the "opening of the FBI's case" is the date from which time should be measured. It is not at all clear what led the FBI to delay until September 22, 2020, to "open a case." Indeed, the government concedes that the FBI was first contacted about the case on August 27, 2020, only fifteen days after the seizure, and 36 days before the warrant was sought. And the government notes that the FBI in fact requested a copy of the case file on September 1, 2020, at which time it also discussed assisting the local police department in reviewing the electronic devices that had been seized. See Doc. #4 at 6. The FBI actually received the case file on September 17, 2020. See id. Whatever the reason for choosing September 22, 2020, to "open the case," the FBI was clearly involved in the investigation far earlier than September 22, 2020, and by no later than September 1, 2020, was aware that it would be asked for

_____

[1] The government makes no argument that a delay of 51 days in seeking a warrant is reasonable. Such a lengthy delay is, under Martin and Smith, and applying common sense, unreasonable on its face. The only argument offered as to this factor is that the involvement of different law enforcement authorities alters the time period the Court should consider.

"assistance in reviewing the large quantity of data on the seized devices." Doc. #4 at 6.

Second, the Court does not agree that the addition of the FBI to this investigation changes the analysis. The Fourth Amendment is designed to protect individuals from unreasonable seizures and searches. The reasonableness inquiry includes an assessment of the reasonableness of any delay. Delay is delay, and the effect on the target is the same, whatever or whoever causes that delay. It is noteworthy that here, there is no claim that the local authorities abandoned the case, and the FBI elected to take it up independently. To the contrary, state charges, and only state charges, remain pending against the target. No federal charges have been filed, according to a review of the District of Connecticut Electronic Case Filing system. The Affidavit in support of the search warrant begins with the FBI agent's assertion that she is investigating these offenses "along with members of the Waterbury Police Department[.]" Doc. #1-1 at 1. Indeed, when the Assistant United States Attorney contacted court staff by email to inquire about the expected date for issuance of this ruling, he stated: "The State's Attorney's Office will need to proceed with its investigation and prosecution if the federal warrant application is denied."

It is not at all uncommon for local, state, and federal authorities to collaborate on criminal investigations. Indeed,

many federal cases in this District are now investigated primarily
by "Task Force Officers" -- state and local law enforcement
officers officially detailed to a federal task force, working
alongside federal law enforcement officers. Permitting the
government to "restart the clock" by shifting an investigation
from one law enforcement agency to another would create an endless
game of hot potato, in which law enforcement officers, having
caused an unreasonable delay, could simply hand the case off to a
colleague in a different agency. This argument was roundly
rejected recently by the Eastern District of Wisconsin:

> Magistrate Judge [David E.] Jones determined that a fifty-
> five-day delay in securing the search warrants was
> unreasonable under the circumstances. The government
> counters that the nearly two-month delay was reasonable in
> light of the fact that the investigation shifted from state
> authorities to federal authorities. They contend that the
> month before the federal government became involved should
> not "count" against them. That is not a reasonable outcome.
> Local and federal authorities working together on a case
> must be held to the same constitutional standards.

United States v. Grills, No. 18CR00228(JPS)(DEJ), 2019 WL 5587328,
at *8 (E.D. Wis. Oct. 30, 2019) (adopting, in relevant part,
Recommended Ruling, 2019 WL 7602210, at *6 (E.D. Wis. July 29,
2019)).

The Fourth Amendment is focused on the rights of the
individual whose property is seized.[2] It makes no difference to the

---

[2] This focus impacts the Court's analysis of each factor, and in
fact tips the balance in favor of issuance of the search warrant
in other factors.

person subjected to a seizure whether state, local, federal, or a combination of various law enforcement officials hold that property once it is seized. The deprivation is the same.

This factor, the length of the delay, weighs <u>strongly</u> <u>against</u> issuance of the search warrant.

**B.    Importance of the Seized Property to the Target**

The second <u>Smith</u> factor is the importance of the seized property to the rightful possessor of the property. This factor takes on several dimensions in the instant case. The <u>Smith</u> Court framed this factor as requiring consideration of the <u>defendant's</u> interest in the property, presumably because of the factual circumstances (the tablet at issue in fact was the property of the defendant) and the procedural posture (the defendant sought suppression of the evidence located on the seized tablet). Here, the seizure impacts the property interests of the target <u>and</u> his spouse. The Court therefore considers the important of the seized property to each individual affected by the seizure, not just the person against whom the evidence sought is likely to be used.[3]

The property seized is undoubtedly of significant importance to the target and potentially to his spouse. In the 21st century, most Americans are heavily reliant on electronic devices for both

---

[3] Indeed, it is possible that any evidence found on the seized devices could be used against the spouse, though the information currently available to the Court suggests that the spouse is not currently a target of the investigation.

personal and business needs, and in the COVID-19 era, that
reliance has only increased. As the Smith Court noted, "the search
and seizure of personal electronic devices like a modern cell
phone or tablet computer implicates different privacy and
possessory concerns than the search and seizure of a person's
ordinary personal effects." Smith II, 967 F.3d at 208.

Evaluation of this factor, however, must take into account
the practical realities of the case at hand. The Court finds it is
appropriate to consider not only the importance of the property,
but also the utility of the property, in all the circumstances.
Here, the target has been criminally charged and remains detained
pending trial. See Doc. #4 at 7. As such, he would be unable to
make use of the devices, even if they had not been seized. Cf.
United States v. Kowalczyk, No. 3:08CR00095(GMK), 2012 WL 3201975,
at *23 (D. Or. Aug. 3, 2012) (Because defendant "was in custody,
there was no evidence that withholding access to his computers and
other digital evidence was prejudicial; he had no serious
possessory interest at stake.").

The government asserts that neither the target nor his spouse
has "requested for any of the seized devices to be returned." Doc.
#4 at 7. This also affects the Court's analysis; if the items
seized were of great importance and utility to the target or his
spouse, they could have sought return of those items. They did
not. Cf. United States v. Conley, 342 F. Supp. 3d 247, 269 (D.

Conn. 2018) ("Furthermore, neither Conley nor anyone else has
requested the return of any of the cell phones, either during the
delay or at any time prior to the evidentiary hearing.").

As noted above, the Fourth Amendment seeks to protect
individuals from unreasonable seizures. When property is seized,
the Amendment seeks to preserve an individual's right and ability
to possess and use her or his own property against unreasonable
interference. Where the individual has little desire or ability to
use or possess the seized property, the need for this protection
is greatly diminished. See, e.g., Conley, 342 F. Supp. 3d at 269
("Conley had a diminished possessory interest in the cell phone
because Conley was detained [in custody] following the arrest, and
[the detention facility] does not permit its inmates to possess
cell phones.") (collecting cases).

The Court notes briefly the agent's claim that this matter is
distinguishable -- presumably to the government's advantage --
from Smith because in Smith, "the device seized was a single
tablet[.]" Doc. #1-1 at 12 n.4. In the Court's view, this
difference weighs against the government. Indeed, the Smith Court
noted that the defendant there "had alternative electronic devices
that could serve the same function" as the seized device -- which
is not surprising, where only one device is seized. Smith II, 967
F.3d at 208. Here, the seizure of fourteen devices rather than one
does not improve the government's position.

Notwithstanding this misplaced argument by the government, the Court finds that the second factor, the importance and utility of the seized property to its owners, weighs <u>strongly in favor</u> of issuance of the search warrant.

### C.   **Reduced Property Interest in Seized Items**

As noted above, the agent contends in the Affidavit, and the government presses in its memorandum, this distinction between <u>Smith</u> and the instant case: "Significantly, in Smith, the defendant's device was seized based on warrantless probable cause[.]" Doc. #1-1 at 12 n.4; Doc. #4 at 7-8.[4] Unlike some of the government's other efforts to differentiate <u>Smith</u>, the Court finds this difference significant and, in combination with the second factor, dispositive of the issue.

In <u>Smith</u>, the tablet seized was seized <u>without a warrant</u>, based on a claim by the officer on scene that he viewed an image on the tablet screen that he believed "may pertain to a possible illegal sexual encounter[.]" <u>Smith II</u>, 967 F.3d at 202. The tablet

---

[4] The government also contends that the target admitted that "these devices contain contraband," and thus the target has no right to possess them. Doc. #4 at 7. The Affidavit suggests the matter is less clear-cut. The Affidavit indicates that the target said, as to certain devices, that "it was possible that there might still be" contraband on them. <u>Id.</u> The target allegedly stated that in fact he had downloaded contraband, and when he did, he saved it to a particular hard drive. <u>See</u> Doc. #1-1 at 10. The Affidavit does not indicate that the target ever asserted that all fourteen devices seized contained contraband. Accordingly, the undersigned finds this argument unpersuasive.

was seized and retained on that basis, though Smith was not at the time being investigated for any sexually based offenses; he was arrested for driving while intoxicated. See id. at 203. When asked the following day to consent to a search of the tablet, Smith refused. See id.

Here, the factual background is very different.[5] The first ten devices were seized pursuant to a search warrant issued by a Connecticut Superior Court judge, based on that judge's finding of probable cause. See Doc. #4-2. The probable cause finding was based on a detailed affidavit, describing an ongoing investigation in which law enforcement officers were able to download alleged child pornography over the internet from a source they believed to be located at the target's home. The four later-seized devices were seized after the target himself informed law enforcement of

---

[5] The Court does not agree that Smith is distinguishable because, as the Affidavit asserts, in Smith, "the police had no independent reason to hold on to the device[.]" Doc. #1-1 at 12 n.4. To the contrary, this case shares that feature with Smith. Here, as in Smith, state and federal law enforcement officials have retained the devices because they believe they contain evidence of contraband, specifically, child pornography. The devices are not, independent of that belief, otherwise susceptible to seizure. See Smith II, 967 F.3d at 209 ("Nor does the record show that Smith's tablet had independent evidentiary value that would have justified the police's retention of the tablet without regard to whether they ever sought a warrant to search the tablet's contents."). See also United States v. Pratt, 915 F.3d 266, 273 (4th Cir. 2019) ("We decline to affirm on the government's alternative argument that it could retain the phone indefinitely because it had independent evidentiary value, like a murder weapon. Only the phone's files had evidentiary value.").

their existence and location, and his spouse expressly consented to their seizure. See Doc. #1-1 at 11-12.

The seizure of Smith's tablet was effected without a warrant and without consent. Here, each seizure was effected with either a warrant or consent. The probable cause for the warrantless seizure in Smith was "equivocal" at best. Smith II, 967 F.3d at 209. Here, the probable cause was strong. Most significantly, though this is not discussed specifically by the government in its memorandum, the original warrant issued in this case actually sought authority for "a Search and Seizure warrant to be issued for the purpose of search for and seizing [certain items] and that a complete digital forensic examination be performed on the items seized." Doc. #4-2 at 5 (emphasis added); see also id. at 6 (requesting that the property seized be submitted "to laboratory analysis and examination[]" by the "Waterbury Police Department Computer Crimes Unit").

By its own terms, the original warrant would have allowed the local police department to conduct the search federal authorities now seek to conduct. A new warrant is necessary to permit federal authorities to conduct the search, cf. United States v. Hulscher, No. 4:16CR40070-01(KES), 2017 WL 657436, at *2 (D.S.D. Feb. 17, 2017), and because the original warrant has expired. But it matters that the underlying basis for the search was established by a sworn affidavit and accepted by a Superior Court Judge at the

time of the seizure. Such a search must therefore be presumed
reasonable, unless the intervening delay renders it unreasonable.
See Ganek v. Leibowitz, 874 F.3d 73, 81 (2d Cir. 2017) ("[A]
search pursuant to a warrant issued by a judicial officer upon a
finding of probable cause is presumptively reasonable[.]").

The Fourth Amendment generally requires that law enforcement
obtain a warrant from a judge before conducting a seizure or
search. See Mincey v. Arizona, 437 U.S. 385, 393-94 (1978)
("[W]arrants are generally required to search a person's home or
his person[.]"). That is the protection the system provides. Here,
that process was followed, and that protection was provided, in
the form of a Superior Court Judge's review and grant of the
request to seize and search these items. See Matter of Warrant to
Search a Certain E-Mail Account Controlled & Maintained by
Microsoft Corp., 829 F.3d 197, 223 (2d Cir. 2016) (Lynch, J.,
concurring), vacated and remanded as moot sub nom. United States
v. Microsoft Corp., 138 S. Ct. 1186 (2018) ("In this case, the
government proved to the satisfaction of a judge that a reasonable
person would believe that the records sought contained evidence of
a crime. That is the showing that the framers of our Bill of
Rights believed was sufficient to support the issuance of search
warrants.").

The Court finds that the seizure of the devices at issue by
warrant and/or consent, coupled with the fact that a warrant was

issued by a Superior Court Judge prior to the seizure permitting
search of the devices, result in this factor weighing <u>strongly</u> <u>in</u>
<u>favor</u> of issuance of the search warrant.

>    **D.   Justification for the Delay**

As to the final factor, the agent contends that <u>Smith</u> can be
distinguished on the basis of the weakness of the "justification
for the delay in seeking the warrant." Doc. #1-1 at 12 n.4. In
<u>Smith</u>, the justification offered was the "heavy caseload" of the
assigned investigator. <u>Smith II</u>, 967 F.3d at 210. Here, the
government offers no particular justification for the delay, other
than the argument, described above in addressing the first factor,
that the delay was not the fault of the federal authorities. The
government offers no explanation at all for why it took more than
a month from the discussion in which the FBI was first alerted
that the local police "needed assistance in reviewing the large
quantity of data on the seized devices[,]" Doc. #7 at 6, for the
FBI to seek a search warrant for that purpose.

The Court finds no justification for the delay in seeking the
search warrant, and thus this factor weighs <u>strongly</u> <u>against</u>
issuance of the search warrant.

>    **E.   Balancing of the Factors**

The Court finds that the first and fourth factors -- the
length of the delay and the (lack of) justification for it --
weight strongly against issuance of the search warrant. The second

and third factors -- the importance and utility of the seized
items to the target and his spouse, and their reduced property
interest in those items -- weigh strongly in favor of issuance of
the search warrant. In balancing these factors, the Court returns
to the purpose of the Fourth Amendment: to protect individuals
from unreasonable searches and seizures. Here, the seizures
themselves were reasonable. While the delay in seeking
authorization for a federal search of the items was unreasonable,
the actual impact of that delay on the rights and property
interests of the target and his spouse was not significant. And,
significantly, a judge had authorized both seizures <u>and</u> searches
of these devices, based on probable cause, even before the
seizures were made.

**V.    Conclusion**

"If the police have seized a person's property for the
purpose of applying for a warrant to search its contents, it is
reasonable to expect that they will not ordinarily delay a month
or more before seeking a search warrant." <u>Smith II</u>, 967 F.3d at
206-07. The delay in this case was unreasonable. Notwithstanding
that delay, however, the Court finds that the deprivation of the
owners' property rights was <u>de</u> <u>minimis</u>. "[T]he Fourth Amendment's
commands, like all constitutional requirements, are practical and
not abstract." <u>United States v. Ventresca</u>, 380 U.S. 102, 108
(1965). Accordingly, under the factors delineated in <u>Smith</u>, and in

light of the purpose of the Fourth Amendment's prohibition on unreasonable seizures, the Court finds that issuance of the search warrant is appropriate.

Nothing in this Order should construed as determining or limiting any party's rights to seek other relief, in any forum, such as suppression of any evidence obtained, related to the seizure and, now, search of these devices.

At the time the Court reviewed the proposed search warrant with the government, the Court noted several concerns with Application A to the warrant, including: (1) the Affidavit and Application assert that the violations suspected are of subsections of 18 U.S.C. §2252A (receipt, distribution and possession of child pornography) but Attachment A to the proposed warrant references only 18 U.S.C. §2251 (production of child pornography); (2) item 6 on the list of things to be seized refers to Kik, though no allegation has been made that Kik was used in this offense; (3) item 8 refers to Craigslist, though no allegation has been made that Craigslist was used in this offense. The government shall submit a revised proposed search warrant to the undersigned **forthwith** for review, by docketing the proposed search warrant on ECF as a "Notice".

It is so ordered.

                              /s/
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES MAGISTRATE JUDGE